UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -- X

SOFIA ISLAS, VICTORINA BATANA, ERNESTA
VILLEGAS MORAN, LUCIA JAVIER, ROSA
FLORES and GLORIA ZURITA, individually
and on behalf of others similarly                REPORT AND
situated,                                        RECOMMENDATION

                        Plaintiffs,      CV 2010-3129 (ENV)(MDG)


            - against -

ELB AND GEN LLC, CHAMPION LAUNDERERS
INC., MICHAEL ELBOGEN, MARTIN ELBOGEN
and ALLAN RUDICK,

                    Defendants.

- - - - - - - - - - - - - - - - - -X

TO: THE HONORABLE ERIC N. VITALIANO:

     Plaintiffs Sofia Islas, Victorina Batana, Ernesta Villegas

Moran, Lucia Javier, Rosa Flores and Gloria Zurita seek recovery

of unpaid minimum wages and overtime wages from defendants ELB

and Gen LLC (d/b/a Champion Launderers Inc.), Michael Elbogen,

and Martin Elbogen (collectively "defendants")[1] under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., as well as

pendent state claims under the New York Labor Law.  Following

defendants' failure to answer or otherwise respond to  the

complaint, the Honorable Eric N. Vitaliano granted plaintiffs'

motion for default judgment and referred to me to report and

_____

     [1] Plaintiffs voluntarily dismissed the claims brought
against Allan Rudick.  See ct. doc. 10.

recommend on damages and other relief.

## PERTINENT FACTS

The following facts are adduced from the complaint and the individual affidavits of each plaintiff, which essentially reiterate the allegations in the complaint.  These submissions are undisputed and are taken as true for purposes of deciding this motion.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted).

Plaintiffs were employed by defendants at dry cleaning and laundering establishments at two locations, All Clean Laundromat in Manhattan and Champion Launderers in Brooklyn.  See Complaint ("Compl.") (ct. doc. 1) at ¶¶ 1, 2.  The individual defendants control the operations of the corporate defendants, determine the wages, compensation and schedules of their employees and have the authority to hire and fire their employees.  Id. at ¶¶ 21-23.  Plaintiffs were not paid overtime wages and were paid less than minimum wage for certain periods of their employment.  Id. at ¶¶ 118, 119, 122.  Plaintiffs received a fixed amount of weekly pay from defendants regardless of the number of hours worked.  Id. at ¶ 120.  As discussed further below, some plaintiffs were paid the same weekly rate while others were paid the same hourly rate for each hour worked.

Plaintiff Sofia Islas worked for defendants at their Manhattan location from July 2004 to September 2005 and again from December 2008 to December 28, 2009.  See Affidavit of Sofia

-2-

Islas ("Islas Aff.") (ct. doc. 40) at ¶ 11. During her first
term of employment, Islas had a work schedule from 8:00 p.m. to
6:00 a.m., Monday through Saturday, and typically worked 60 hours
per week. Id. at ¶ 12(1).[2] During her second term of
employment, Islas had a work schedule from 10:00 a.m. to 8:30
p.m., Monday through Saturday, and typically worked 63 hours per
week. Id. at ¶ 12(2). Throughout her employment, Islas was paid
wages in cash at a regular rate of $5.50 per hour and was not
paid overtime for hours worked in excess of 40 hours per week.
Id. at ¶¶ 13-15, 18. Even though she states she was paid on an
hourly basis, Islas also states that she was paid a fixed amount
each week regardless of the number of hours she worked. Islas
Aff. at ¶ 15. This Court assumes that she meant a fixed hourly
rate. This statement in the affidavit conflicts with her claim
she was paid hourly, particularly in light of the allegation in
the complaint that her "wages never varied even when she was
required to stay later or work a longer day then her usual
schedule." Compl. at ¶ 146. However, this discrepancy is
insignificant since plaintiff Islas is seeking as damages only
the differential in pay for overtime wages. Some of the
affidavits from the plaintiffs suffer from the same problems and
this Court will calculate damages based on the allegations in the
affidavits.

    Plaintiff Rosa Flores worked for defendants at their

---

[2] Ms. Islas' affidavit contains two paragraphs numbered
"12."

Manhattan location from November 2009 to December 2009 and at
their Brooklyn location from December 2009 to March 2010.
Affidavit of Rosa Flores (ct. doc. 39) at ¶¶ 5, 6.  From November
2009 to December 2009, Flores worked from 10:00 a.m. to 7:00 p.m.
or 8:00 p.m., six days per week, for between 54 and 60 hours per
week.  See id. at ¶ 12.  From December 2009 to March 2010,
plaintiff worked from 10:00 a.m. or 10:30 a.m. to 11:00 p.m. or
11:30 p.m., six days per week, typically 78 hours per week.  Id.
at ¶ 13.  Three to four times per week, Flores was made to work
until 12:00 a.m.  Id.  Flores was paid $330 per week throughout
her employment regardless of how many hours she worked.  Id. at
¶¶ 15, 16.

        Plaintiff Ernesta Villegas Moran worked for defendants from
June 2007 to November 12, 2009 at the Manhattan location.
Affidavit of Ernesta Villegas Moran (ct. doc. 36) at ¶¶ 5, 6.
Moran had a work schedule from 10:00 a.m. to 8:30 p.m., six days
per week, and typically worked 63 hours per week.  Id. at ¶ 12.
From June 2007 to November 2008, Moran was paid $6.00 per hour
and from November 2008 to November 12, 2009 she was paid $330.00
per week regardless of how many hours she worked.  Id. at ¶¶ 14-
16.

        Plaintiff Lucia Javier worked at the Manhattan location from
June 2009 to December 2009 and the Brooklyn location from
December 2009 to April 2010.  Affidavit of Lucia Javier at ¶¶ 5,
6.  From June 2009 to December 2009, Javier worked from 10:00
a.m. to 8:30 p.m., six days per week, for a total of 63 hours per

week, at the rate of $330 per week.  Id. at ¶ 12.  From December 2009 to February 2010, Javier worked from 10:00 a.m. to 10:00 p.m., six days per week, for a total of 72 hours per week, at the rate of $330 per week.  Id. at ¶¶ 13, 17.  From February 2010 to April 2010, Javier worked from 2:00 p.m. to 12:00 a.m., six days per week, for a total of 60 hours per week, at the rate of $450 per week.  Id. at ¶¶ 14, 18.

Plaintiff Gloria Zurita worked at the Manhattan location from October 2009 to December 2009 and at the Brooklyn location from December 2009 to January 2010.  See Affidavit of Gloria Zurita (ct. doc. 37) at ¶ 6.  For the first week of her employment, Zurita worked from 6:00 a.m. to 2:00 p.m., six days per week, for a total of 48 hours.  Id. at ¶ 12.  From October 2009 to December 2009, Zurita worked from 10:00 a.m. to 7:00 p.m. or 9:00 p.m., six days per week, for a total of 54 to 66 hours per week.  Id. at ¶ 13.  She was then sent to work at the Brooklyn location, and for two weeks, worked for six days per week from 12:00 p.m. to 12:00 a.m., for a total of 72 hours.  Id. at ¶ 14.  She then worked at the Brooklyn location until January 2010 from 12:00 p.m. to 7:00 p.m. or 8:00 p.m., six days per week, for a total of 42 to 48 hours.  Id. at ¶ 15.  Zurita was paid $330 per week from October 2009 to December 2009 and $380 per week from December 2009 to January 2010.  Id. at ¶ 18.

Plaintiff Victorina Batana worked at the Manahattan location from December 2008 to December 28, 2009.  See Affidavit of Victorina Batana (ct. doc. 41) at ¶¶ 5, 6.  Batana worked from

-5-

10:00 a.m. to 8:30 p.m. Tuesdays through Saturdays and from 8:00 a.m. to 7:00 p.m. on Sundays, typically 63.5 hours per week.  Id. at ¶ 12.  She was paid $330 per week throughout her term of employment.  Id. at ¶ 14.

## PROCEDURAL BACKGROUND

Plaintiffs commenced this action on July 8, 2010.  See ct. doc. 1.  Following the defendants' failure to file an answer or otherwise respond to the complaint, Judge Vitaliano granted plaintiff's motion for default judgment.[3]

## DISCUSSION

### I.  Governing Legal Standards

A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages.  See Greyhound, 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.  See Greyhound, 973 F.2d at 159.  The movant need prove "only that the compensation sought relate[s] to the damages that naturally flow

---

[3] Judge Vitaliano twice previously denied plaintiffs' motions for default judgment for their failure to follow the applicable procedures.  See ct. doc. 23; electronic order dated June 4, 2013.

from the injuries pleaded."  Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment.  The court has the discretion to require an evidentiary hearing or to rely on detailed affidavits or documentary evidence in making this determination.  See Action S.A. v. Marc Rich and Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. Conticommodity Serv, Inc., 873 F.2d 38, 40 (2d Cir. 1989)); Chun Jie Yin v. Kim, 2008 WL 906736, at *2 (E.D.N.Y. 2008) (collecting cases); Fed. R. Civ. P. 55(b)(2).  The moving party is entitled to all reasonable inferences from the evidence it offers.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Au Bon Pain, 653 F.2d at 65 (citing TWA, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

## II.  **Liability**

### A.  FLSA claims

Plaintiffs bring claims under the FLSA alleging that defendants violated sections 206 and 207 of the statute.  The FLSA was enacted by Congress "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers.'"  Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (footnote omitted).  Section 206 of the FLSA sets forth a minimum

hourly wage employers must pay their employees who engage in work affecting interstate commerce.  29 U.S.C. § 206(a)(1)(C). Section 207 specifies that an employer must pay employees who work in excess of forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Employers in violation of either of these provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Id. § 216(b).

In addition, section 211(c) of the FLSA requires that covered employers "make, keep and preserve . . . records" of their employees with respect to "wages, hours, and other conditions and practices of employment" for a certain period of time.  Id. § 211(c).  The information that must be kept in these records is set forth in 29 C.F.R. § 516.2(a)(1)-(12).[4]  Section 215(a)(5) of the FLSA makes it unlawful for any employer covered under the statute to violate any of these record-keeping provisions.  See 29 U.S.C. § 215(a)(5).

    1.   Interstate Commerce Requirement

As a preliminary matter, a plaintiff in an FLSA action must

---

[4] Such regulations "have the force of law, and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to statute." Freeman v. Nat'l Broadcasting Co., 80 F.3d 78, 82 (2d Cir. 1996) (citations omitted).

establish that the defendants are "employers" and that the employer is engaged in "interstate commerce."  See 29 U.S.C. § 207(a), 203(s).  An employer is liable for wages under the FLSA if it hires an employee who either: 1) is engaged in commerce or in the production of goods for commerce or 2) is employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce.  29 U.S.C. §§ 203(r),(s), 207(a). Under the FLSA, an "enterprise" is an entity engaged in interstate commerce that has no less than $500,000 in annual gross volume of sales.  See 29 U.S.C. § 203(s).

Plaintiffs have alleged in the complaint that defendants and/or their enterprise engaged in interstate commerce, that their employees used numerous items that were produced outside New York and that gross sales were at least $500,000.  Compl. at ¶¶ 33, 34.  These allegations are sufficient to satisfy the interstate commerce requirement.  See Smith v. Nagai, 2012 WL 2421740, at *2 (S.D.N.Y. 2012) (finding that restaurant's purchase of food out of state satisfied interstate commerce requirement); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) ("logical to infer that the cleaning supplies utilized by the plaintiffs originated outside of New York").

        2.  Employer

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a).  Plaintiff has established

-9-

that the corporate defendant operated the dry cleaning businesses where plaintiffs worked and that the individual defendants were responsible for the practices challenged in this action.  In addition, the individual defendants supervised plaintiffs, and had the authority to hire and fire them and controlled their rates of pay.  Therefore, all the defendants are employers subject to FLSA liability.

            3.  <u>Sufficiency of Allegations</u>

     Plaintiffs allege in their complaint that defendants did not pay them the proper minimum wage or overtime, specifically alleging the hours they worked and wages paid.  Based on these undisputed allegations in the complaint and default submissions, the Court finds that liability is properly imposed against defendants for violations of the FLSA.

      B.  <u>New York Labor Law</u>

     New York's Labor Law is the state analogue to the federal FLSA.  Although the Labor Law "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales," it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime.  <u>Chun Jie Yin</u>, 2008 WL 906736, at *4; <u>see</u> N.Y. Lab. Law § 652 (minimum hourly wage); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(1) (same); <u>id.</u> § 142-2.2 (same methods as employed in the FLSA for calculating overtime wages).  One notable difference in New York law is a "spread of hours" provision which allows a plaintiff to recover an extra hour's worth of pay at the

minimum wage for each day that an employee works in excess of ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.

For the reasons discussed above, the allegations in the complaint and default submissions are sufficient to impose liability on defendants under the Labor Law's minimum wage and overtime provisions.  See Debejian v. Atl. Testing Labs., Ltd., 64 F. Supp. 2d 85, 87 n.1 (N.D.N.Y. 1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).  Furthermore, the Court finds that the plaintiffs are entitled to recover "spread of hours" pay under the Labor Law based upon the undisputed allegations that they regularly worked over 10 hours per day but were not given an extra hour's worth of wages at minimum wage for those days.

## III. **Damages**

A.   Damages Period

The limitations period for claims brought under the FLSA is two years, but for willful violations, the period is three years.  See 29 U.S.C. § 255(a).  To demonstrate willfulness, plaintiffs must show that the employer either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).  Generally, courts have found that a defendant's default

is tantamount to an admission of allegations of willfulness.  See Hernandez v. PKL Corp., 2013 WL 5129815, at *2 (E.D.N.Y. 2013); Rodriquez v. Queens Convenience Deli Corp., 2011 WL 4962397, at *2 (E.D.N.Y. 2011).  Plaintiffs also allege defendants' violations were willful.  Compl. at ¶¶ 135, 139.  These allegations are sufficient to support a finding of willfulness to trigger application of the longer three year FLSA limitations period.  Therefore, I recommend awarding plaintiffs damages under the FLSA for conduct occurring since July 8, 2007, three years before the filing of the complaint.

Claims brought under the New York Labor Law are subject to a six year limitations period.  N.Y. Labor Law § 198(3), 663(3).  Plaintiffs are entitled to recover damages during the six years that preceded the filing of the complaint on July 8, 2010

B.   Recoverable Damages

Under the FLSA, plaintiffs who prevail under either section 206 or 207 are entitled to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  As discussed above, the New York Labor Law mirrors the FLSA in terms of compensating for overtime and minimum wage violations.  In addition to the liquidated damages that may be awarded under the FLSA, see 29 U.S.C. § 216(b), liquidated damages are also available under New York law.  N.Y. Lab. Law § 663.

In calculating damages, this Court relies on the submissions

of plaintiffs and has not required a hearing.  The Second Circuit has expressly endorsed this approach so long as the court has "'ensured itself that there was a basis for the damages specified in the default judgment.'" <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997) (quoting <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)).  Plaintiffs have submitted sworn affidavits containing information as to hours worked and rates of pay based on estimate and recollection.  Since the defendants have failed to dispute plaintiffs' allegations, I find that plaintiffs have provided a sufficient basis for determination of damages.

Generally, an employee-plaintiff under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946), <u>superseded on other grounds by</u> The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, <u>et</u> <u>seq</u>.  As the Supreme Court recognized in <u>Anderson</u>, "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy."  <u>Id.</u> Therefore, the easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to "secur[e] the production of such records" from the employer, who has the duty to maintain such records under section 11(c) of the FLSA.  <u>Id.</u>  However, by defaulting, defendants have deprived plaintiffs of the necessary employee records required by the FLSA, thus hampering plaintiffs' ability to prove their damages.

In addressing the problem of proof faced by employees, the Supreme Court in Anderson held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id.  As courts have found, a plaintiff can meet this burden "by relying on recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); see also Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011); Padilla v. Manlapaz, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009).  In the absence of rebuttal by defendants," Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998), or "[w]here the employer has defaulted, [as here, the employee's] recollection and estimates of hours worked are presumed to be correct," Pavia v. Around the Clock Grocery, Inc., 2005 WL 4655383, at *5 (E.D.N.Y. 2005); see also Harold Levinson Assocs., Inc. v. Chao, 37 Fed. Appx. 19, 20 (2d Cir. 2002).  "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the FLSA's record-keeping provisions]." Anderson, 328 U.S. at 688.

New York law goes one step further and requires that employers who fail to maintain the appropriate records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196-a; see Padilla, 643 F. Supp. 2d at 307.  With this framework in mind,

the Court proceeds to its calculation of damages.

    C.   <u>Determination of Damages</u>

       1.   <u>Minimum and Overtime Wages</u>

Plaintiffs are entitled to damages for having been paid less than the prevailing minimum wage and not being paid time and one-half for those hours worked in excess of 40 per week.  An employee gets the benefit of the higher of the applicable federal or state minimum wage.  <u>See</u> 29 U.S.C. § 218(a); N.Y. Lab. Law § 652(1); <u>Shahriar v. Smith & Wollensky Rest. Group, Inc.</u>, 659 F.3d 234, 247 (2d Cir. 2011).

      a.   <u>Sofia Islas</u>

Ms. Islas worked for defendants from approximately July 2004 until September 2005 and from approximately December 2008 to December 28, 2009 and was paid hourly wages of $5.50 per hour. The applicable minimum wage for Ms. Islas' first term of employment was $5.15 per hour until January 1, 2005, when the minimum wage increased to $6.00 per hour.  For Ms. Islas' second term of employment, the minimum wage was $7.15 per hour until it increased to $7.25 in July 24, 2009.

Ms. Islas states that she worked 6 days per week totaling 60 hours for the 64 weeks between July 8, 2004 and September 30, 2005 and 6 days per week totaling 63 hours for 55 weeks between December 1, 2008 and December 28, 2009.  As plaintiffs correctly calculated, the outstanding minimum wages due Ms. Islas are $1,170 ($6.00-$5.50 per hour x 60 hours x 39 weeks) for the period from January 1, 2005 to September 30, 2005, $3,430.35

($7.15-5.50 per hour x 63 hours x 33 weeks) from December 1, 2008 through July 23, 2009 and $2,425.50 ($7.25-5.50 per hour x 63 hours x 22 weeks) from July 24, 2009 to December 28, 2009.  Thus, Ms. Islas is owed a total of $7,025.85 in unpaid minimum wages.

As for unpaid overtime, Ms. Islas is entitled to $1,375 ($5.50 per hour x ½ x 20 overtime hours x 25 weeks) for July 8, 2004 through December 31, 2004; $2,340 ($6.00 per hour x ½ x 20 overtime hours x 39 weeks) for January 1, 2005 to September 30, 2005; $2,713.43 ($7.15 per hour x ½ x 23 overtime hours x 33 weeks) for December 1, 2008 to July 23, 2009; and $1,834.25 ($7.25 per hour x ½ x 23 overtime hours x 22 weeks) for July 24, 2009 to December 28, 2009.  Thus, I recommend awarding Ms. Islas $8,262.68 in unpaid overtime.

b.  Victorina Batana

Ms. Batana worked for defendants from December 2008 until December 28, 2009.  The minimum wage during Ms. Batana's employment was $7.15 per hour until July 24, 2009 when it was increased to $7.25 per hour.  Plaintiffs' calculations are based on Ms. Batana having worked 63.5 hours per week and paid $330.00 per week, for an hourly rate of $5.20.

For the period of December 1, 2008 to July 23, 2009, Ms. Batana is entitled to $4,086.23 in unpaid minimum wages ($7.15-$5.20 per hour x 63.5 hours x 33 weeks).  For July 24, 2009 to December 28, 2009, plaintiff is owed $2,863.85 ($7.25-$5.20 per hour x 63.5 hours x 22 weeks).  Thus, Ms. Batana is due $6,950.08 in unpaid minimum wages.

-16-

As for unpaid overtime, I recommend awarding Ms. Batana $2,772.41 ($7.15 per hour x ½ x 23.5 overtime hours x 33 weeks) for the period of December 1, 2008 to July 23, 2009 and $1,874.13 ($7.25 x ½ x 23.5 overtime hours x 22 weeks) for the period of July 24, 2009 through December 28, 2009 for a total of $4,646.54 in overtime wages.

c.  Ernesta Villegas Moran

Ms. Moran worked for defendants from June 1, 2007 to November 12, 2009.  The minimum wage was $7.15 from the start of Ms. Moran's employment until July 24, 2009, when the rate was raised to $7.25 per hour.  Plaintiffs' calculations are based on Ms. Moran working 63 hours per week at the rate of $6.00 per hour until December 1, 2008 when her salary decreased to a flat $330.00 per week, or $5.24 per hour.

For the period of June 1, 2007 to November 30, 2008, Ms. Moran is owed minimum wages of $5,651.10 ($7.15-$6.00 per hour x 63 hours x 78 weeks).  From December 1, 2008 to July 23, 2009, Ms. Moran is owed minimum wages in the amount of $3,970.89 ($7.15-$5.24 per hour x 63 hours x 33 weeks).  For the period of July 24, 2009 to November 12, 2009, Ms. Moran is due $2,026.08 ($7.25-$5.24 per hour x 63 hours x 16 weeks).  I recommend awarding a total of $11,648.07 to Ms. Moran for unpaid minimum wages.

As for overtime, Ms. Moran is entitled to $9,126.98 ($7.15 per hour x ½ x 23 overtime hours x 111 weeks) for the period of June 1, 2007 through July 23, 2009.  From July 24, 2009 through

-17-

November 12, 2009, Ms. Moran is owed $1,334 ($7.25 per hour x ½ x 23 overtime hours x 16 weeks).  Thus, I recommend awarding Ms. Moran $10,460.98 for unpaid overtime.

### d. Lucia Javier

Ms. Javier states in her affidavit that she worked for defendants from June 2009 to April 2010.  Her work schedule fluctuated during that time so that she worked 63 hours per week from June 1, 2009 to November 30, 2009, 72 hours from December 1, 2009 to January 31, 2010 and 60 hours from February 1, 2010 to April 30, 2010.  She was paid $330.00 per week from June 2009 to February 2010, at an hourly rate of $5.24 in the weeks she worked 63 hours and a rate of $4.58 in the weeks she worked 72 hours.  She was then paid $450.00 per week from February 2010 to April 2010, at an hourly rate of $7.50 for 60 hours of work.

As for minimum wages, Ms. Javier is owed $842.31 ($7.15-$5.24 per hour x 63 hours x 7 weeks) for work from June 1, 2009 to July 23, 2009.  For July 24, 2009 to November 30, 2009,[5] Ms. Javier is owed $2,279.34 ($7.25-$5.24 per hour x 63 hours x 18 weeks).  From December 1, 2009 to January 31, 2010,[6] Ms. Javier is entitled to $1,537.92 ($7.25-4.58 per hour x 72 hours x 8 weeks).  Thus, I recommend awarding Ms. Javier $4,659.57 for

---

[5] Although plaintiffs based their calculations for this period on Ms. Javier having worked 72 hours per week, according to her affidavit, she worked 63 hours per week.

[6] Plaintiffs' calculations omit the month of December 2009.  Since Ms. Javier states in her affidavit that she worked during this period, I recommend awarding her damages for that month based on her having worked 72 hours per week.

unpaid minimum wages for the period from June 2009 until February 2010, when she was paid above the minimum wage rate.

As for overtime wages, Ms. Javier is owed $575.58 ($7.15 per hour x ½ x 23 hours x 7 weeks) for June 1, 2009 to July 23, 2009. For July 24, 2009 to November 30, 2009, Ms. Javier is owed $1,500.75 ($7.25 per hour x ½ x 23 overtime hours x 18 weeks). For December 1, 2009 to January 31, 2010, Ms. Javier is entitled to $928.00 ($7.25 per hour x ½ x 32 overtime hours x 8 weeks). For February 1, 2010 to April 30, 2010, Ms. Javier is owed $975.00 ($7.50 per hour x ½ x 20 overtime hours x 13 weeks). Thus, I recommend awarding Ms. Javier $3,979.33 in overtime wages.

### e. Rosa Flores

Ms. Flores states that she worked for defendant from November 2009 to March 2010. During that period, she worked 54 to 60 hours per week from November 2009 to December 2009 and approximately 78 hours per week from December 2009 to March 2010. Inexplicably, plaintiffs' calculations for these time periods are based on Ms. Flores having worked 81 hours per week.[7] Given the

---

[7] Ms. Flores states that from December 2009 to March 2010, in addition to the 78 hours per week she "typically" worked, "3 to 4 times per week" she also "was made to work after my departure time until 12:00 a.m." Flores Aff. at ¶ 13. However, given that based on her estimates, she worked as few as 75 hours some weeks, I recommend calculating her damages for this time period based on 78 hours per week. In addition, my calculations give Ms. Flores the benefit of rounding up the number of weeks worked. Accordingly, I calculate damages for 9 weeks from November 1, 2009 to December 31, 2009, rather than 8 weeks and 5 days, and 13 weeks for January 1, 2010 to
(continued...)

statements by Ms. Flores in her affidavit, I will assume that she worked 58 hours per week from November 2009 through December 2009 and 78 hours per week from January 2010 through March 2010.  Ms. Flores was paid $330.00 per week, for an hourly wage of $5.69 in the weeks she worked 58 hours and $4.23 in the weeks she worked 78 hours, even though the applicable minimum wage during this time period was $7.25.

Ms. Flores is owed $814.32 ($7.25-5.69 per hour x 58 hours x 9 weeks) in minimum wages for the period from November 1, 2009 through December 31, 2009 and $3,062.28 ($7.25-4.23 per hour x 78 hours x 13 weeks) for January 1, 2010 to March 31, 2010.  Thus, Ms. Flores is owed $3,876.60 in minimum wages.

As for overtime wages, Ms. Flores is entitled to $587.25 ($7.25 x ½ x 18 overtime hours x 9 weeks) for November 1, 2009 through December 31, 2009 and $1,790.75 ($7.25 x ½ x 38 overtime hours x 13 weeks) for January 1, 2010 through March 31, 2010. Thus, I recommend awarding Ms. Flores $2,378.00 for overtime wages.

### f.  Gloria Zurita

Ms. Zurita states that she worked for defendants from October 2009 until January 2010.  During that time, the number of hours she worked each week fluctuated -- Ms. Zurita worked 48 hours during her first week of employment, 54 to 66 hours per week from October 2009 until December 2009, 72 hours per week for

---

[7](...continued)
March 31, 2010, instead of 12 weeks and 6 days.

the next 2 weeks and 42 to 48 hours per week for the rest of her employment with defendants.  Despite the statement in her affidavit that she worked 48 hours during her first week, plaintiffs calculated damages based on Ms. Zurita having worked 48 hours for the first 2 weeks.  This Court's calculations are based on the assumption that she worked one less week at 48 hours and one more week at 60 hours as compared to plaintiffs' calculations.  Ms. Zurita was paid $330 per week from October 2009 to December 2009, at a rate of $6.88 per hour in the weeks she worked 48 hours and $5.50 per hour in the weeks she worked 60 hours.  When her pay increased to $380 per week from December 2009 to January 2010, she was paid at an hourly rate of $5.28 for 72 hours of work and $8.44 an hour for 45 hours of work.

As to minimum wages, Ms. Zurita is owed $17.76 ($7.25-$6.88 per hour x 48 hours x 1 week) for October 1, 2009 to October 7, 2009.  From October 8, 2009 through November 30, 2009, Ms. Zurita is entitled to $840.00 ($7.25-$5.50 per hour x 60 hours x 8 weeks).  For the period of December 1, 2009 through December 14, 2009, Ms. Zurita is owed $283.68 ($7.25-$5.28 per hour x 72 hours x 2 weeks) for unpaid minimum wages but none for the period from December 15, 2009 through January 2010.  Thus, Ms. Zurita is owed a total of $1,141.44 in unpaid minimum wages.

For overtime, Ms. Zurita is entitled to $29.00 ($7.25 x ½ x 8 overtime hours x 1 week) for the week of October 1, 2009 to October 7, 2009.  For October 8, 2009 to November 30, 2009, Ms. Zurita is owed $580.00 ($7.25 x ½ x 20 overtime hours x 8 weeks).

-21-

From December 1, 2009 through December 14, 2009, Ms. Zurita is due $232.00 ($7.25 x ½ x 32 overtime hours x 2 weeks).  For December 15, 2009 through January 31, 2010, Ms. Zurita is due $126.60 ($8.44 x ½ x 5 overtime hours x 6 weeks).  Thus, I recommend awarding Ms. Zurita $967.60 in overtime wages.

2.   <u>Spread of Hours Pay Under New York Labor Law</u>

Plaintiffs request an award for "spread of hours" pay under New York's Labor Law.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.18.[8]  Each plaintiff worked more than 10 hours per day at some point during their employment.  On those days when the interval between the beginning and end of an employee's workday exceeds 10 hours, New York law requires that the employee "receive one hour's pay at the basic minimum hourly wage rate."[9]  <u>Id.</u> § 142-2.4; <u>see</u>, <u>e.g.</u>, <u>Pavia</u>, 2005 WL 4655383, at *8 (awarding spread of hours pay).

Ms. Islas worked more than 10 hours per day for 6 days per week from December 2008 until December 28, 2009.  Accordingly, she is entitled to spread of hours pay in the amount of $1,415.70 ($7.15 x 6 days x 33 weeks) from December 1, 2008 through July 23, 2009, and $957.00 ($7.25 x 6 days x 22 weeks) from July 24,

_____

[8] Plaintiffs incorrectly cite to the New York spread of hours regulation that applies only to the restaurant industry.  <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 12 § 137-1.7.

[9] Although there is a split of authority among the courts in this Circuit as to whether employees who are paid more than the minimum wage are entitled to spread of hours pay, here, the only periods where plaintiff was paid more than the minimum wage did not include any days that the employee worked more than 10 hours.

2009 through December 28, 2009, for a total of $2,372.70.

Ms. Batana worked more than 10 hours per day for 6 days per week throughout her employment.  From December 1, 2008 through July 23, 2009, Ms. Batana is owed $1,415.70 ($7.15 x 6 days x 33 weeks) and from July 24, 2009 through December 28, 2009, she is due $957.00 ($7.25 x 6 days x 22 weeks), for a total of $2,372.70.

Ms. Moran worked more than 10 hours per day for 6 days per week throughout her employment.  From June 1, 2007 to July 23, 2009, Ms. Moran is owed $4,761.90 ($7.15 x 6 days x 111 weeks), and from July 24, 2009 to November 12, 2009, Moran is due $696.00 ($7.25 x 6 days x 16 weeks), for a total of $5,457.90.

Ms. Javier worked more than 10 hours per day for 6 days per week from June 1, 2009 through January 31, 2010.  From June 1, 2009 through July 23, 2009, Ms. Javier is owed $300.30 ($7.15 x 6 days x 7 weeks), and from July 24, 2009 through January 31, 2010 Ms. Javier is due $1,131.00 ($7.25 x 6 days x 26 weeks), for a total of $1,431.30.

Ms. Flores worked more than 10 hours per day for 6 days per week from January 1, 2010 to March 31, 2010.[10]  For that time period, Ms. Flores is due $565.50 ($7.25 x 6 days x 13 weeks).

Plaintiffs request spread of hours pay for Ms. Zurita for

---

[10] Plaintiffs' calculations split Ms. Flores' employment into two segments, before January 1, 2010 and after January 1, 2010.  Since Ms. Flores' affidavit is ambiguous as to when her work hours increased, I adopt plaintiffs' demarcation.  Based on Ms. Flores' affidavit, she did not work more than 10 hours per day prior to the increase in her hours.

the two week period of December 1, 2009 to December 14, 2009, in which she worked more than 10 hours per day for 6 days per week. Thus, Ms. Zurita is owed $87.00 ($7.25 x 6 days x 2 weeks).

### 3. Liquidated Damages

Plaintiffs also seek liquidated damages. Liquidated damages under the FLSA are "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA." Herman v. RSR Secs. Servs., Ltd., 172 F.3d 132, 141-42 (2d Cir. 1999); see Irizarry v. Catsimatidis, 722 F.3d 99, 116 (2d Cir. 2013) (noting that liquidated damages under the FLSA are not penalties). In contrast, "liquidated damages under the Labor Law 'constitute a penalty,' to deter an employer's willful withholding of wages due." Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir. 1999).

Here, plaintiffs request liquidated damages under the New York Labor Law for the period prior to July 8, 2007, and under the FLSA for the period subsequent to July 8, 2007. However, plaintiffs appear to request liquidated damages under the FLSA in the amount of 100% of unpaid wages but apply the New York minimum wage rate where it is higher than the federal minimum wage. Absent any authority for such an approach, I recommend awarding liquidated damages for each time period under one only statute and applying that jurisdiction's minimum wage rate.

Section 216(b) of the FLSA provides that an employer shall be liable to the employees who are not paid minimum wage or overtime "an additional equal amount as liquidated damages"

-24-

unless the employer can show that it acted in good faith.   29

U.S.C. § 216(b).   As the defendants here have defaulted, they

have not shown they acted in good faith.   See, e.g., Blue v.

Finest Guard Services, Inc., 2010 WL 2927398, at *11 (E.D.N.Y.

2010) (finding that a defendant's default, in itself, may suffice

to support a claim for liquidated damages); Dong v. CCW Fashion

Inc., 2009 WL 884680, at *4-5 (S.D.N.Y. 2009).   Since the federal

minimum wage rate was lower than the New York minimum wage from

July 8, 2007 to July 23, 2009, the calculations for liquidated

damages under the FLSA for that time period are based on the

lower federal rate, unlike the recommended award for unpaid

minimum wages and overtime wages, which is based on the higher of

the federal or New York rate.   I recommend awarding liquidated

damages under the FLSA in the amount of $49,999.59 as reflected

in the chart below:

| Plaintiff | Dates | FLSA Min. Wage Rate | FLSA Min. Wages | FLSA Overtime Wages | FLSA Liquidated Damages |
|-----------|-------|---------------------|-----------------|---------------------|-------------------------|
| Islas | 12/1/08-7/23/09 | $6.55 | $2,182.95 | $2,485.73 | $4,668.68 |
| | 7/24/09-12/28/09 | $7.25 | $2,425.50 | $1,834.25 | $4,259.75 |
| Batana | 12/1/08-7/23/09 | $6.55 | $2,828.93 | $2,539.76 | $5,368.69 |
| | 7/24/09-12/28/09 | $7.25 | $2,863.85 | $1,874.13 | $4,737.98 |
| Moran | 7/8/07-7/23/08 | $5.15/$5.85 | -------- | $3,726.00 | $3,726.00 |
| | 7/24/08-11/30/08 | $6.55 | $   623.70 | $1,355.85 | $1,979.55 |

| Plaintiff | Dates | FLSA Min. Wage Rate | FLSA Min. Wages | FLSA Overtime Wages | FLSA Liquidated Damages |
|---|---|---|---|---|---|
| | 12/1/08– 7/23/09 | $6.55 | $2,723.49 | $2,485.73 | $5,209.22 |
| | 7/24/09– 11/12/09 | $7.25 | $2,026.08 | $1,334.00 | $3,360.08 |
| Javier | 6/1/09– 7/23/09 | $6.55 | $   577.71 | $   527.28 | $1,104.99 |
| | 7/24/09– 11/30/09 | $7.25 | $2,279.34 | $1,500.75 | $3,780.09 |
| | 12/1/09– 1/31/10 | $7.25 | $1,537.92 | $   928.00 | $2,465.92 |
| | 2/1/10– 4/30/10 | $7.25 | -------- | $   975.00 | $   975.00 |
| Flores | 11/1/09– 12/31/09 | $7.25 | $   814.32 | $   587.25 | $1,401.57 |
| | 1/1/10– 3/31/10 | $7.25 | $3,062.28 | $1,790.75 | $4,853.03 |
| Zurita | 10/1/09– 10/7/09 | $7.25 | $    17.76 | $    29.00 | $    46.76 |
| | 10/8/09– 11/30/09 | $7.25 | $   840.00 | $   580.00 | $1,420.00 |
| | 12/1/09– 12/14/09 | $7.25 | $   283.68 | $   232.00 | $   515.68 |
| | 12/15/09– 1/31/10 | $7.25 | -------- | $   126.60 | $   126.60 |
| TOTAL | | | | | $49,999.59 |

Plaintiff is also entitled to liquidated damages based on 25% of the amounts owed for minimum wages, overtime and spread of hours under New York state law that have not been compensated here under the FLSA.  Under New York law, for almost the entire relevant time period, the burden was on the plaintiffs to

demonstrate that their employer acted "willfully" in violation of
the statute.  N.Y. Lab. Law § 198(1-a) (2009).  After amendments
which took effect in November 2009, the burden is on the employer
to prove a good faith basis to believe that its underpayment of
wages was in compliance with the law to avoid imposition of
liquidated damages.  See N.Y. Lab. Law § 663.  Under either
standard, defendants' default establishes plaintiffs' entitlement
to liquidated damages.  I recommend awarding liquidated damages
under New York law in the amount of $4,499.63 as follows:

| Pl. | Dates | NY Min. Wage Rate | Min Wages | Overtime | SOH | NY Labor Law Liq. Damages |
|---|---|---|---|---|---|---|
| Islas | 7/8/04-12/31/04 | $5.15 | -------- | $1,375.00 | | $  343.75 |
| | 1/1/05-9/30/05 | $6.00 | $1,170.00 | $2,340.00 | | $  877.50 |
| | | | | | $ 2,372.70 | $  593.18 |
| Batana | 12/1/08-12/28/09 | | | | $ 2,372.70 | $  593.18 |
| Moran | 6/1/07-7/7/07 | $7.15 | $  362.25 | $  411.13 | | $  193.35 |
| | 7/8/07-7/23/07 | $7.15 | $ 52.90 | --------- | | $   13.23 |
| | | | | | $ 5,457.90 | $1,364.48 |
| Javier | 6/1/09-1/31/10 | | | | $ 1,431.30 | $  357.83 |
| Flores | 11/1/09-3/31/10 | | | | $  565.50 | $  141.38 |
| Zurita | 12/1/09-12/14/09 | | | | $   87.00 | $   21.75 |
| TOTAL | | | | | $12,287.10 | $4,499.63 |

-27-

In sum, the plaintiffs are entitled to the following damages under the FLSA and the New York Labor Law:

| | |
|---|---|
| Minimum Wages | $ 35,301.61 |
| Overtime Wages | $ 30,695.13 |
| Spread of Hours Pay | $ 12,287.10 |
| Liquidated Damages (FLSA) | $ 49,999.59 |
| Liquidated Damages (NY) | $  4,499.63 |
| **TOTAL DAMAGES** | $132,783.06 |

5.   Prejudgment Interest

Plaintiffs also seek prejudgment interest on unpaid wages owed and spread of hours pay under the Labor Law.  Federal courts have long recognized that prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA. Thomas v. iStar Fin., Inc., 652 F.3d 141, 150 n.7 (2d Cir. 2011); Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 714-16 (1945)).  Since liquidated damages awarded under the FLSA for unpaid wages are designed to compensate employees for delays in payment, such damages are the functional equivalent of prejudgment interest and are thus barred.

However, the Second Circuit has also held that "[p]re-judgment interest and liquidated damages under the Labor Law are not functional equivalents" and thus may both be awarded for violations of state wage laws.  Reilly, 181 F.3d at 265.  As the Reilly court explained, "prejudgment interest" is meant "to compensate a plaintiff for the loss of use money," while, as

-28-

discussed above, "liquidated damages under the Labor Law 'constitute a penalty.'"  Id. (citations omitted).  Plaintiff is entitled to prejudgment interest only on minimum wages, overtime and spread of hours pay for which FLSA liquidated damages are not available.

Section 5001 of New York's Civil Practice Law and Rules governs the calculation of prejudgment interest for violations of the Labor Law.  See Pavia, 2005 WL 4655383, at *8.  Courts ordinarily apply a statutory interest rate of nine percent per annum in determining prejudgment interest under New York law.  N.Y. C.P.L.R. § 5004.  Section 5001(b) sets forth two acceptable methods of calculating prejudgment interest.  First, interest may be calculated from "the earliest ascertainable date the cause of action existed."  N.Y. C.P.L.R. § 5001(b).  However, "[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.  Id. To that end, courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994).  I find that the midway point between the beginning and end of each plaintiff's term of employment for which they are entitled to damages under New York law is a "reasonable intermediate date" for purposes of calculating prejudgment interest.  Pavia, 2005 WL 4655383, at *8; see also Liu v. Jen Chu Fashion Corp., 2004 WL 33412, at *5 (S.D.N.Y. 2004) (adopting counsel's "midpoint of the

-29-

accrual of damages" date).

Accordingly, I recommend awarding prejudgment interest in the amount of $12,847.61 through March 31, 2016 and at the rate of $4.43 per day thereafter until the entry of judgment as reflected in the chart below:

| Pl. | Dates | Mid-point | NY State Damages | Per Diem | No. of Days | Interest through 3/31/16 |
|---|---|---|---|---|---|---|
| Islas | 7/8/04-12/28/09 | 4/4/07 | $7,257.70 | $ 1.79 | 3285 | $ 5,880.15 |
| Batana | 12/1/08-12/28/09 | 6/15/09 | $2,372.70 | $ 0.59 | 2482 | $ 1,464.38 |
| Moran | 6/1/07-11/12/09 | 8/21/08 | $6,248.18 | $ 1.55 | 2780 | $ 4,309.00 |
| Javier | 6/1/09-1/31/10 | 10/1/09 | $1,431.30 | $ 0.35 | 2374 | $ 830.90 |
| Flores | 11/1/09-3/31/10 | 1/15/10 | $ 565.50 | $ 0.14 | 2268 | $ 317.52 |
| Zurita | 12/1/09-1/31/10 | 12/31/09 | $ 87.00 | $ 0.02 | 2283 | $ 45.66 |
| TOTAL | | | | | | $12,847.61 |

## IV. Attorneys' Fees

The FLSA allows for an award of "reasonable" attorney's fees. See 29 U.S.C. § 216(b). Plaintiff bears the burden of proving the reasonableness of the fees sought. See Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999).

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee." Hensley v. Eckerhart, 461 U.S.

424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood
Ass'n, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters,
Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir.
1989); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542,
551-53 (2010) (discussing lodestar methodology).  In reviewing a
fee application, the district court must examine the particular
hours expended by counsel with a view to the value of the work
product of the specific expenditures to the client's case.  See
Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994);
DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985).  If any
expenditure of time was unreasonable, the court should exclude
these hours from the calculation.  See Hensley, 461 U.S. at 434;
Lunday, 42 F.3d at 133.  The court should thus exclude
"excessive, redundant or otherwise unnecessary hours, as well as
hours dedicated to severable unsuccessful claims."  Quaratino v.
Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  A party seeking
attorneys' fees bears the burden of supporting its claim of hours
expended by accurate, detailed and contemporaneous time records.
New York State Ass'n for Retarded Children, Inc. v. Carey, 711
F.2d 1136, 1147-48 (2d Cir. 1983).

A reasonable hourly rate is "the rate a paying client would
be willing to pay," "bear[ing] in mind that a reasonable paying
client wishes to spend the minimum necessary to litigate the case
effectively."  Arbor Hill, 522 F.3d at 190.  The reasonable
hourly rates should be based on "rates prevailing in the
community for similar services of lawyers of reasonably

comparable skill, experience, and reputation." Cruz v. Local
Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing
Blum v. Stenson, 465 U.S. 886, 894 (1984)).  Determination of the
prevailing market rates may be based on evidence presented or a
judge's own knowledge of hourly rates charged in the community.
See Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d
Cir. 2005); Chambless, 885 F.2d at 1059.  The "community" is
generally considered the district where the district court sits.
See Arbor Hill, 522 F.3d at 190.  Although plaintiffs selected
out-of-district counsel here, I recommend awarding attorneys'
fees based on the prevailing hourly rates in this district.  See
Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174-77 (2d Cir.
2009).  Plaintiffs have not argued that they can overcome the
presumption in favor of application of the forum rule.  See id.
at 175.

     Plaintiffs seek $10,945.00 in attorneys' fees for the work
of Michael Faillace, the managing member of his firm, and an
associate, Yolanda Rivero.  In his sworn declaration, Mr.
Faillace explains that he has practiced employment law since 1983
and Ms. Rivero has practiced law since 1998 and has concentrated
her practice on FLSA matters since 2006.

     The rate of $450 per hour for the work of Mr. Faillace is
higher than the rates generally awarded to similarly experienced
attorneys in this district.  As a preliminary matter, courts have
found that the prevailing hourly rate for partners in this
district is between $300 and $400.  See, e.g., Konits v.

-32-

Karahalis, 409 Fed. App'x 418, 422–23 (2d Cir. 2011) (affirming holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour); Jean v. Auto & Tire Spot Corp., 2013 WL 2322834, at *6 (E.D.N.Y. 2013); Colon v. City of New York, 2012 WL 691544, at *21 (E.D.N.Y. 2012) (approving rate of $350 per hour for solo practitioner); Concrete Flotation Sys., Inc. v. Tadco Construction Corp., 2010 WL 2539771, at *4 (E.D.N.Y. March 15, 2010) (collecting cases); Luca v. County of Nassau, 698 F. Supp. 2d 296, 301–02 (E.D.N.Y. 2010); see also Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (observing in FLSA case that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants") (citations omitted). The small size of his law firm is a factor in determining a reasonable hourly rate. See GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim, 2009 WL 3241757, at *4 (E.D.N.Y. 2009); Vilkhu v. City of N.Y., 2009 U.S. Dist. LEXIS 73696, at *9 (E.D.N.Y. 2009).

Also, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." Arbor Hill, 522 F.3d at 184 n.2 (citations omitted). The nature of the work performed in this matter was relatively straightforward and no novel or complex issues were raised by plaintiffs. An award of $375 per hour is

consistent with recent attorneys' fee awards recommended in FLSA cases by this Court and other judges in this district.  See Cuevas v. Ruby Enterprises of N.Y., Inc., 2013 WL 3057715, at *2 (E.D.N.Y. 2013) (awarding partners with 16 years and 18 years of experience $350 per hour); Ramirez v. H.J.S. Car Wash Inc., 2013 WL 3148658, at *2 (E.D.N.Y. 2013) (awarding Mr. Faillace $300 per hour); Jemine v. Dennis, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) (affirming this Court's recommendation that $400 hourly rate be reduced to $375 per hour in FLSA case for partner with 23 years of experience); Santillan v. Henao, 822 F. Supp. 2d 284, 300 (E.D.N.Y. 2011) (awarding Mr. Faillace $375 per hour).

In FLSA cases, reasonable hourly rates awarded for the work of senior associates ranges from $200 to $300.  Hernandez v. NJK Contractors, Inc., 2015 WL 5178119, at *4 (E.D.N.Y. 2015); Luo v. L & S Acupuncture, P.C., 2015 WL 1954468, at *2 (E.D.N.Y. 2015). As for Ms. Rivero, I recommend reducing the rate requested of $350 per hour to $275 per hour.  See Dominguez, 2015 WL 1439880, at *15 (approving rate of $275 per hour for senior associate); Gonzales v. Gan Israel Pre-School, 2014 WL 1011070, at *19 (E.D.N.Y. 2014) (reducing claimed rate to $275 per hour for associate practicing since 2007); Ramirez, 2013 WL 3148658, at *2 (awarding Ms. Rivero $225 per hour); Man Wei Shiu v. New Peking Taste, 2013 WL 2351370, at *19 (E.D.N.Y. 2013) (awarding $275 per hour for attorney with ten years of experience).

Plaintiff's fee request is based on 27.3 hours of time spent litigating this case.  Based on my review of counsel's

-34-

contemporaneous time records, although the time spent is
reasonable in light of the work completed, some of the work
completed by counsel should be billed at a lower rate.  For
example, Mr. Faillace billed 1.5 hours for filing the complaint.
I recommend reducing Mr. Faillace's rate to $90 per hour for 1.5
hours spent on this task that should have been completed by a
paralegal.  In addition, Mr. Faillace billed 1.75 hours for legal
research.  This research should have been conducted by an
associate at a reduced rate, if at all, considering the hourly
rate recommended for Mr. Faillace's work is based on his
extensive experience in litigating employment cases and the
relatively straightforward issues raised in this action.
Accordingly, I recommend that this time be compensated at the
rate recommended for Ms. Rivero.

Thus, I recommend awarding fees in the amount of $8,673.75
as set forth in the chart below:

| Name | Hourly Rate | Number of Hours | Recommended Award |
|------|-------------|-----------------|-------------------|
| Michael Faillace | $375.00 | 10.65 | $  3,993.75 |
| Michael Faillace | $90.00 | 1.5 | $    135.00 |
| Michael Faillace | $275.00 | 1.75 | $    481.25 |
| Yolanda Rivero | $275.00 | 13.40 | $  3,685.00 |
| **TOTAL** | | | $  8,295.00 |

Plaintiff further requests an award of $630.00 for costs

incurred during the course of this litigation, consisting of the court filing fee and service of process fees.  As a general matter, a prevailing plaintiff in an action under the FLSA is entitled to recover costs from the defendant.  <u>See</u> 29 U.S.C. § 216(b).  However, only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. <u>Moon v. Kwan</u>, 2002 WL 31512816, at *30-31 (S.D.N.Y. 2002) (quoting <u>Kuzma v. IRS</u>, 821 F.2d 930, 933-34 (2d Cir. 1987)). Since court filing and service of process fees are routinely recoverable, I recommend awarding plaintiffs costs in the amount requested.

<u>CONCLUSION</u>

For the reasons stated above, I respectfully recommend that plaintiffs' motion for default judgment be granted against ELB and GEN LLC (d/b/a Champion Launderers Inc.), Michael Elbogen and Martin Elbogen in the total amount of $154,555.67 for the following: (a) minimum wages of $35,301.61, overtime wages of $30,695.13, spread of hours pay of $12,287.10, liquidated damages under the FLSA of $49,999.59, liquidated damages under the New York Labor Law of $4,499.63, and prejudgment interest of $12,847.61 through March 31, 2016 and at a daily rate of $4.43 thereafter until the entry of judgment, to be awarded each plaintiff as set forth in the attached appendix entitled, "TOTAL DAMAGES SUMMARY;" (b) attorneys' fees of $8,295.00; and (c) costs of $630.00.

A copy of this report and recommendation will be filed electronically and sent by mail to the defendants on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to Judge Vitaliano, by March 28, 2016.  Failure to file objections within the time specified waives the right to appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:     Brooklyn, New York
           March 10, 2016


                              _____/s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE

## APPENDIX

| TOTAL DAMAGES SUMMARY | | | | | | |
|---|---|---|---|---|---|---|
| Plaintiff | Minimum Wages | Overtime Wages | Spread of Hours | FLSA Liquidated Damages | NY Liquidated Damages | Interest | Total |
| Islas | $ 7,025.85 | $ 8,262.68 | $ 2,372.70 | $ 8,928.43 | $ 1,814.43 | $ 5,880.15 | $34,284.24 |
| Batana | $ 6,950.08 | $ 4,646.54 | $ 2,372.70 | $ 10,106.67 | $ 593.18 | $ 1,464.38 | $26,133.55 |
| Moran | $ 11,648.07 | $ 10,460.98 | $ 5,457.90 | $ 14,274.85 | $ 1,571.06 | $ 4,309.00 | $47,721.86 |
| Javier | $ 4,659.57 | $ 3,979.33 | $ 1,431.30 | $ 8,326.00 | $ 357.83 | $ 830.90 | $19,584.93 |
| Flores | $ 3,876.60 | $ 2,378.00 | $ 565.50 | $ 6,254.60 | $ 141.38 | $ 317.52 | $13,533.60 |
| Zurita | $ 1,141.44 | $ 967.60 | $ 87.00 | $ 2,109.04 | $ 21.75 | $ 45.66 | $ 4,372.49 |
| TOTAL | $ 35,301.61 | $ 30,695.13 | $ 12,287.10 | $ 49,999.59 | $ 4,499.63 | $12,847.61 | $145,630.67 |